Adam Richards, Esq. (AR-2489)
O'REILLY STOUTENBURG RICHARDS LLC
32 East 57th Street, 8th Floor
New York, New York 10022
(212) 419-9880

Attorneys for Plaintiff David Heard

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DAVID HEARD,<br><br>       Plaintiff,<br>   v.<br><br>STATUE CRUISES, LLC,<br><br>       Defendant. | Civil Action No.<br>16 CV _O١٥ ٦٩_<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff DAVID HEARD, by and through his attorneys O'Reilly Stoutenburg Richards, LLP, for his Complaint against defendant STATUE CRUISES, LLC, alleges as follows:

### Nature of this Action

1.     The Statue of Liberty, towering over New York harbor, is one of the most iconic emblems of the rights and freedoms of American citizens. Nearby Ellis Island, which was the first stop for millions of immigrants to the United States in the 19th and 20th centuries, is likewise a symbol of the freedoms those immigrants sought in this country. More than 4 million Americans visited these parks in 2014.

2.     In a tragic irony, tens of thousands of disabled Americans who depend on wheelchairs for mobility – including many military veterans who were disabled in the

service of this country – cannot easily visit the Statue of Liberty or Ellis Island, because defendant Statue Cruises, LLC ("Statue Cruises"), which holds the exclusive right to operate ferry boats to the Statue of Liberty and Ellis Island, does not make its ferry boats accessible for wheelchair users. Defendants' conduct violates the Americans with Disabilities Act and the New York State and New York City Human Rights Laws.

3.      By this action, plaintiff seeks to compel defendant to obey the law and make its ferry boats fully accessible to the disabled, and seeks damages on account of defendant's unlawful acts.

### The Parties, Jurisdiction and Venue

4.      Plaintiff David Heard is an individual and a resident of Queens New York. Mr. Heard is disabled and is dependent upon use of a wheelchair for mobility.

5.      Defendant Statue Cruises is a limited liability company organized under the laws of Delaware, which does business in the State of New York. Defendant is subject to personal jurisdiction in this Court pursuant to New York CPLR § 302(a).

6.      This Court has jurisdiction of Plaintiff's first claim for relief pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because this action arises under the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.* This Court has jurisdiction of Plaintiff's second and third claims for relief pursuant to 28 U.S.C. §1367(a), because those claims are so related to Plaintiff's first claim for relief as to form part of the same case or controversy under Article III of the United States Constitution.

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2), because the events and omissions giving rise to this action took place in this District.

2

## Statutory Background

8.      On July 26, 1990, Congress enacted the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*, establishing the most important civil rights legislation for persons with disabilities in our country's history.

9.      In the ADA, Congress made statutory findings, including:

(a)      physical or mental disabilities in no way diminish a person's right to fully participate in all aspects of society, yet many people with physical or mental disabilities have been precluded from doing so because of discrimination;

(b)      historically, society has tended to isolate and segregate individuals with disabilities, and despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem;

(c)      discrimination against individuals with disabilities persists in such critical areas as employment, housing, public accommodations, education, transportation, communication, recreation, institutionalization, health services, voting, and access to public services;

(d)      individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities.

42 U.S.C. § 12101(a)(1, 2, 3, 5).

10. The ADA prohibits discrimination on the basis of disability in the full and equal enjoyment of the goods, services, privileges, advantages and facilities of places of public accommodation and public transportation services. 42 U.S.C. §§ 12182(a) and 12184(a).

11. The applicability of the ADA to passenger vessels was explicitly recognized by federal regulations, 49 C.F.R. §§ 39.1 *et seq.,* and by the United States Supreme Court's decision in *Spector v. Norwegian Cruise Line Ltd.,* 545 U.S. 119 (2005).

12. The ADA provides that entities that provide public accommodations and public transportation must make "reasonable modifications in policies, practices [and] procedures, when such modifications are necessary" to provide disabled individuals with full and equal enjoyment, 42 U.S.C. §§ 12182(b)(2)(A)(ii), 12184(b)(2)(A), and must, to the extent readily achievable, remove any architectural and structural barriers preventing equal access for the disabled, 42 U.S.C. §§ 12182(b)(2)(A)(iv-v), 12184(b)(2)(C).

13. Discrimination against persons with disabilities in places of public accommodation is also defined as an "unlawful discriminatory practice" under the New York State Human Rights Law (New York Executive Law §296(2)(a)) and under the New York City Human Rights Law (New York City Administrative Code §8-107(4)(a)).

14. A person aggrieved by an unlawful discriminatory practice in violation of the New York State Human Rights Law has a cause of action in any court of competent jurisdiction for damages, pursuant to New York Executive Law §297(9). A person aggrieved by an unlawful discriminatory practice in violation of the New York City Human Rights Law has a cause of action in any court of competent jurisdiction for damages, including punitive damages, and for injunctive relief, pursuant to New York City Administrative Code §8-502(a).

15.   In 2005, the New York City Council enacted Local Law No. 68.  In that law, the City Council made a finding that "the city of New York's water borne commuter service facilities are not uniformly accessible to disabled persons.  This is a matter of serious concern affecting the public safety and welfare.  The Council believes that there is an immediate need for regulation of water borne commuter services in order to enable members of the public to have access to such services on an equal basis with non-disabled persons.  The Council believes that under the Americans with Disabilities Act (ADA), disabled persons have the right to access commuter transportation services on an equal and non-discriminatory basis." N.Y.C. Administrative Code § 19-702.

16.   Local Law No. 68 therefore set "specific standards in relation to mandating accessible water borne commuter services facilities for disabled persons, thereby minimizing the tremendous and unfair burden placed on disabled persons who rely on these services." *Id.*

17.   Among the requirements imposed by Local Law No. 68 on water borne passenger services are the following:

(a)   an accessible route "consisting of a continuous, firm, stable and slip-resistant path," N.Y.C. Admin. Code § 19-705;

(b)   a point of embarkation and disembarkation with a minimum clear width of 36 inches, *id.* § 19-705(a)(1);

(c)   gangways with handrails on each side, a minimum clear width of 36 inches, and a maximum slope of 1:12, *id.* § 19-705(b)(1-3); and

(d)   transition plates and ramps with a maximum slope of 1:12, *id.* §§ 19-705(a)(3), (c).

## Facts

18.     The Statue of Liberty sits on Liberty Island, an island in Upper New York Bay.  The National Immigration Museum sits on Ellis Island, also an island in Upper New York Bay.  Both sites are part of the Statue of Liberty National Monument, operated by the National Park Service of the U.S. Department of the Interior, and within the Southern District of New York.

19.     Because both Liberty Island and Ellis Island are islands, the general public can reach them only via ferry boats.  Under a contract between the U.S. National Park Service ("NPS") and defendant Statue Cruises, Statue Cruises has the exclusive right to operate commercial ferry boats to those islands.

20.     The contract requires Statue Cruises to comply with all applicable laws in the operation of the ferry boats, including the ADA.

21.     Because Statue Cruises' Liberty Island and Ellis Island ferries operate between New York, New York and those islands, Local Law 68 is an "applicable law" under the concession from NPS.

22.     On or about December 11, 2015, Mr. Heard purchased from defendant Statue Cruises a ticket for a round-trip ferry ride from Battery Park, Manhattan, to the Statue of Liberty.

23.     When Mr. Heard attempted to board the ferry boat, the gangplank could not accommodate his motorized wheelchair.  Employees of Statue Cruises were required to place additional, unstable, plates at the base of the gangplank so he could board the ferry.

24.     The gangplank was at a slope exceeding 1:12, did not have a clear width of 36 inches, and did not have adequate handrails, making it difficult, uncomfortable and potentially dangerous for Mr. Heard to board the ferry.

25.     In addition, Mr. Heard was singled out for boarding while other passengers watched. This is in conflict with the purposes and mandates of the ADA that recognize that it is contrary to the dignity of wheel-chair user citizens to be made a spectacle of while merely trying to access public accommodations.

26.     Once on board the ferry, Mr. Heard discovered that the restrooms on board were not accessible to wheelchair users.

27.     Mr. Heard faced the same obstacles and difficulties when disembarking from the ferry. Temporary plates were again hastily thrown in his path just to make disembarkation physically possible and he was again singled out in front of other passengers.

28.     On this date, Mr. Heard rode three different ferry boats operated by Statue Cruises – one to the Statue of Liberty, another to Ellis Island, and another back to Manhattan. All suffered from the same defects.

29.     Notably, on two occasions while "helping" him, Statue Cruises personnel inadvertently turned the power off on Mr. Heard's wheelchair. Given the variety of controls on motorized wheelchairs, a person attempting to assist a wheelchair user could easily put the wheelchair user or others at risk by touching or altering the controls. This is one of the reasons that the law requires accommodations that allow disabled persons to act independently to the maximum extent possible.

30.    Annexed hereto as Exhibit A are photographs illustrating the difficulties faced by Mr. Heard in attempting to board and exit the Statue Cruises' ferries and in attempting to use the restroom on board.[1]

31.    As a result of Statue Cruises' unlawful acts, Plaintiff suffered humiliation and embarrassment and was precluded from enjoying his equal right to access the Statue of Liberty.

32.    On or about December 21, 2015, in response to plaintiff's experience, the United Spinal Association, a membership organization of Americans who have, or are concerned about, spinal injuries and diseases, wrote a letter to the National Park Service (Ex.B), informing it of the aforesaid violations, and requesting that the National Park Service "provide safe and lawful ferry access" to the Statue of Liberty and Ellis Island "as quickly as possible.

33.    By letter dated December 30, 2015 (Ex. C), the Superintendent of the Statue of Liberty National Monument stated that "the National Park Service and Statue Cruises believe that the ferry is in full compliance with all applicable accessibility laws" and declined to take any steps to compel Statue Cruises to remedy the violations alleged above.

34.    The very same letter, however, effectively admits that Statue Cruises *is* in violation of law. Specifically, the NPS letter states:

> Given the fixed pier and seawall embarkation points for the ferries, changing tides and sea conditions, Statue Cruises crew are trained to assist visitors who use wheelchairs, both motorized and non-motorized, as well as any visitor requiring assistance when boarding the boat.

---

[1] A January 4, 2016 report in the NY Daily News also recounts Mr. Heard's experience and includes photographs and video showing the violations by defendant Statue Cruises. http://www.nydailynews.com/new-york/wheelchair-advocate-ny-ferry-violates-disabilities-law-article-1.2484168

35.    The challenges associated with fixed pier and seawall embarkation points, as well as the existence and scope of tides, were of course well known to the drafters of Local Law 68 and that Law's solution was not to have staff assist visitors on an *ad hoc* basis. Rather, there are specific requirements setting the length and grade of gangplanks to make ferries accessible *under these circumstances*. Accordingly, NPS' statement – consistent with plaintiff's personal experience – that Statue Cruises relies on staff to physically assist wheelchair visitors is an admission that Statue Cruises has failed to put in place the accommodations required by law to allow such visitors to use public ferries *without* case-by-case special assistance.[2]

36.    Furthermore, the NPS letter admitted that it was on notice of problems with ferry accessibility in light of a tour conducted by the United States Access Board earlier that year in which the members "also noted the gangplanks."

37.    Finally, the NPS letter entirely ignored that there was no wheelchair accessible bathroom available to Mr. Heard, an indisputable violation of law.

38.    Significantly, and notwithstanding the NPS letter, on information and belief, NPS has over the past few years pushed defendant Statue Cruises to remedy its ADA violations, but Statue Cruises has refused to do so simply because it does not wish to spend the money to make its ferry service accessible.

39.    Mr. Heard desires to visit the Statue of Liberty and Ellis Island in the future, but is deterred from doing so by reason of the difficulties in accessing Statue Cruises' ferry boats while in a wheelchair. Upon information and belief, other members

---

[2] In addition, NPS' attempt to deflect blame by noting that plaintiff United Spinal Association provided crew training to Statue is especially troubling. The only form of training provided by United Spinal dealt with etiquette for dealing with physically challenged visitors, including training them NOT to do what apparently has become Statue's standard operating procedure: making a spectacle of people who simply want to board or disembark a public ferry.

of the Association and other disabled individuals are likely to similarly be deterred from visiting the Statue of Liberty and Ellis Island by reason of Statue Cruises' failure to make its ferry boats accessible to wheelchair users.

## First Claim for Relief

40.     By reason of the foregoing, Statue Cruises has violated, and is continuing to violate, the Americans with Disabilities Act and the New York City Human Rights Law and is thereby discriminating against Plaintiff and other disabled individuals. Plaintiff is entitled to injunctive relief requiring Statue Cruises to comply with the law.

## Second Claim for Relief

41.     Paragraphs 1-40, above, are incorporated by reference.

42.     By reason of the foregoing, Statue Cruises has committed an unlawful discriminatory practice in violation of the New York State Human Rights Law.

43.     Plaintiff has suffered actual damages in an amount to be determined according to proof at trial.

## Third Claim for Relief

44.     Paragraphs 1-43, above, are incorporated by reference.

45.     By reason of the foregoing, Statue Cruises has committed an unlawful discriminatory practice in violation of the New York City Human Rights Law.

46.     Plaintiff has suffered actual damages in an amount to be determined according to the proof at trial.

47.     Statue Cruises' conduct evinces a wanton and reckless violation of Plaintiff's rights, and the rights of all disabled members of the public, entitling Plaintiff to

an award of punitive damages in an amount to be determined according to the proof at trial.

WHEREFORE, Plaintiff prays that this Court enter judgment:

(1)     pursuant to 42 U.S.C § 12188(a)(2), preliminarily and permanently enjoining Statue Cruises from violating the Americans with Disabilities Act and New York City Local Law No. 68, and ordering Statue Cruises to make its ferry boats fully accessible to disabled individuals;

(2)     awarding Plaintiff compensatory damages, pursuant to New York Executive Law §297(g) and New York City Administrative Code §8-502(a);

(3)     awarding Plaintiff punitive damages, pursuant to New York City Administrative Code §8-502(a);

(4)     awarding Plaintiff his reasonable attorneys' fees, pursuant to 42 U.S.C. § 12205, together with his costs of suit; and

(5)     awarding Plaintiff such other and further relief as may be just and equitable.

## Demand for Trial by Jury

Pursuant to Rule 38 of the Federal Rules of Civil Procedure and to the Seventh

Amendment to the Constitution of the United States, Plaintiff hereby demands a trial by

jury of all issues in this action properly so triable.

Dated: New York, New York
          February 11, 2016

Adam Richards, Esq.
O'REILLY STOUTENBERG
RICHARDS, LLP
*Attorneys for Plaintiff*
32 East 57th Street, 8th Floor
New York, New York 10022
(212) 419-9880

12