USDC SDNY
DOCUMENT ELECTRONICALLY FILED
DOC#: _____
DATE FILED: 6/26/17

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| DAVID HEARD,<br><br>        Plaintiff,<br><br>  -against-<br><br>STATUE CRUISES LLC,<br><br>        Defendant. | 16-cv-01079 (ALC)<br><br>**OPINION AND ORDER** |

**ANDREW L. CARTER, JR., United States District Judge:**

  Plaintiff David Heard brings this action against Defendant Statue Cruises, LLC. He alleges that Defendant discriminated against him on the basis of his disability in violation of the Americans with Disabilities Act, the New York State Human Rights Law, and the New York City Human Rights Law. Defendant moves pursuant to Rules 12(b)(1), (b)(6), and (b)(7) of the Federal Rules of Civil Procedure to dismiss the Complaint in its entirety. For the reasons that follow, Defendant's motion is denied.

## BACKGROUND

### I. Factual Background

  The following facts are drawn from Plaintiff's Complaint, and are presumed to be true for purposes of this motion to dismiss. ECF No. 1 ("Compl.").

  Defendant Statue Cruises, LLC, a Delaware limited liability company, "holds the exclusive right to operate ferry boats to the Statue of Liberty and Ellis Island." Compl. ¶¶ 2, 5. The National Park Service operates the Statue of Liberty National Monument which encompasses both the Statue of Liberty on Liberty Island and the National Immigrant Museum on Ellis Island. *Id.* ¶ 18. The contract for ferry service between the National Park Service and

Statue Cruises requires Statue Cruises to comply with all applicable laws, including the Americans with Disabilities Act. *Id.* ¶ 20.

Plaintiff David Heard alleges that Statue Cruises' ferry boats are not accessible to wheelchair users like himself. *Id.* ¶ 2. Heard "is disabled and is dependent upon use of a wheelchair for mobility." *Id.* ¶ 4. On December 11, 2015, Heard purchased a round-trip ferry ticket from Battery Park in Manhattan to the Statue of Liberty. *Id.* ¶ 22. Over the course of the day, Heard road three different Statue Cruises ferries. *Id.* ¶ 28. When he first attempted to board the ferry, "the gangplank could not accommodate his motorized wheelchair," and Statue Cruises employees placed "additional, unstable[] plates" on the gangplank to allow Heard to board. *Id.* ¶ 23. Heard contends that the gangplank was not wide enough and its slope too steep, which made it "difficult, uncomfortable and potentially dangerous" for him to board. *Id.* ¶ 24. Moreover, as a result of the additional steps taken by Statue Cruises, Heard "was singled out for boarding while other passengers watched," causing him to suffer "humiliation and embarrassment." *Id.* ¶¶ 25, 31. Heard faced "the same obstacles and difficulties" while attempting to disembark the ferry. *Id.* ¶ 27. Statue Cruises employees who attempted to help Heard accidentally turned off the power to his wheelchair on two occasions. *Id.* ¶ 29. While he was on the boat, Heard realized that the bathrooms were not wheelchair accessible. *Id.* ¶ 26.

## II.  Procedural Background

Heard initiated this action on February 11, 2016, alleging that Statue Cruises discriminated against him on the basis of his disability in violation of the Americans with Disabilities Act ("ADA"), the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL"). *See* Compl. He seeks injunctive relief pursuant to the ADA and the NYCHRL and damages under the NYSHRL and NYCHRL. *Id.* ¶¶ 40-47. In

lieu of answering the Complaint, Statue Cruises sought to move to dismiss it. ECF No. 10. However, at the pre-motion conference, the parties expressed a willingness to settle the matter, and the Court referred the case to Magistrate Judge Ronald L. Ellis for settlement. ECF No. 16. Despite numerous efforts by Judge Ellis, the parties were unable to settle, and Statue Cruises once again sought to file a motion to dismiss. ECF No. 24. On February 23, 2017, Defendant moved to dismiss the Complaint for failure to state a claim under Rule 12(b)(6), lack of subject matter jurisdiction under Rule 12(b)(1), and for failure to join a necessary party under Rule 12(b)(7). ECF Nos. 29 (Motion), 31 (Affidavit of Michael Burke ("Burke Aff.")), 32 (Affirmation of Jennifer Schmalz), 33 ("Def's Memo."). Plaintiff opposed the motion, ECF No. 34 ("Pl's Memo."), and Defendant submitted a reply brief, ECF No. 30 ("Def's Reply").[1] Accordingly, the Court considers the motion fully submitted.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) requires courts to dismiss a case for lack of subject matter jurisdiction "when the district court lacks the statutory or constitutional authority to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Id.* The plaintiff may meet this burden by "alleg[ing] facts that affirmatively and plausibly suggest" that the court has subject matter jurisdiction over the case. *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011). In deciding a motion to dismiss for lack of subject matter jurisdiction, a court is not limited to the allegations in the complaint and can consider evidence outside the pleadings. *Makarova*, 201 F.3d at 113; *see also In re Petition of Germain*, 824 F.3d 258, 261 (2d Cir. 2016).

---

[1] As a result of Defendant's failure to follow the ECF filing rules, the motion papers appear out of order on the electronic docket.

3

Pursuant to Rule 12(b)(7), a defendant may move to dismiss the complaint for "failure to join a party under Rule 19." As relevant here, Rule 19 requires the joinder of a person if, "in that person's absence, the court cannot accord complete relief among existing parties." Fed. R. Civ. P. 19(a)(1)(A). "Federal courts are extremely reluctant to grant motions to dismiss based on nonjoinder and, in general, dismissal will be ordered only when the defect cannot be cured and serious prejudice or inefficiency will result." *Am. Trucking Ass'ns, Inc. v. N.Y. State Thruway Auth.*, 795 F.3d 351, 357 (2d Cir. 2015) (quoting 7 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1609 (3d ed. 2015)) (quotation marks omitted).

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully," and accordingly, where the plaintiff alleges facts that are "'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In considering a motion to dismiss, the court accepts as true all factual allegations in the complaint and draws all reasonable inferences in the plaintiff's favor. *See Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008). However, the court need not credit "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Instead, the complaint must provide factual allegations

4

sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.*, 507 F.3d 117, 121 (2d Cir. 2007) (citing *Twombly*, 550 U.S. at 555). The court "may consider the facts as asserted within the four corners of the complaint together with the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010) (citation and internal quotation marks omitted).

## DISCUSSION

### I. Plaintiff's Claims are Not Moot

Statue Cruises first argues that Heard's claims for injunctive relief are moot as a result of the company's decision to "design[] and implement[] an improved plate wedge with handrails" and to provide its employees with "further ADA Etiquette Training." Def's Memo. at 9 (citing Burke Aff. ¶ 5). Heard denies that the purported remedies are sufficient and argues that this argument is premature in advance of any factual development. Pl's Memo. at 10. The Court agrees.

The mootness doctrine derives from Article III of the Constitution, which "grants the Judicial Branch authority to adjudicate 'Cases' and 'Controversies.'" *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 133 S. Ct. 721, 726 (2013). "[A]n actual controversy must exist not only at the time the complaint is filed, but through all stages of the litigation." *Id.* (citation and internal quotation marks omitted). Generally, "[t]he voluntary cessation of allegedly illegal activity may render a case moot if the defendant can demonstrate that (1) there is no reasonable expectation that the alleged violation will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Clear Channel Outdoor, Inc. v. City of N.Y.*, 594

F.3d 94, 110 (2d Cir. 2010) (citation and internal quotation marks omitted). The Supreme Court has described the showing required to prove voluntary compliance as a "formidable burden." *Already*, 133 S. Ct. at 727 (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000)).

In the ADA context, courts have dismissed as moot cases in which the record developed showed that defendant had remedied the alleged violations; however, these decisions typically arise after some measure of reciprocal discovery, often in the summary judgment context. *See, e.g., Bacon v. Walgreen Co.*, 91 F. Supp. 3d 446, 451-52 (E.D.N.Y. 2015) (dismissed as moot on motion to dismiss where there was factual development and plaintiff conceded that remedial measures were taken); *Azrelyant v. B. Manischewitz Co.*, No. 98-cv-2502 (ILG), 2000 WL 264345, at *9 (E.D.N.Y. Jan. 13, 2000) (dismissed as moot on motion for summary judgment). Indeed, all but one of the decisions cited by Statue Cruises were based on facts developed by the parties outside of the pleadings. *See* Def's Memo. at 10 (citing cases).[2]

Here, there simply is not enough in the record for the Court to determine that Statue Cruises has "completely and irrevocably eradicated" the violations Heard alleges. *Clear Channel Outdoor*, 594 F.3d at 110. There also is insufficient evidence to reasonably conclude that the alleged violation—if actually remedied—will not recur. *Id.* It does not appear that Statue Cruises expended any particularly great sum of money in designing and implementing this new "plate wedge," nor is it the type of remedy that could not be undone without significant expense. *Cf. Rosa v. 600 Broadway Partners* LLC, 175 F. Supp. 3d 191, 201 (S.D.N.Y. 2016) ("In ADA cases involving architectural barriers remedied by structural changes, some courts

---

[2] *Nat'l All. for Accessibility, Inc. v. Walgreen Co.*, 2011 WL 5975809, at *2 (M.D. Fla. Nov. 28, 2011), was decided in the context of a motion to dismiss where there does not appear to have been any factual development; however, the plaintiff conceded that the defendant was no longer in violation of the ADA, which is not the case here.

have found that the conduct reasonably would not recur because the defendants would have no reason to alter the structural changes back.") (citation and internal quotation marks omitted) (collecting cases). Defendant could simply choose to stop using the new plate wedge or its employees could inadvertently fail to do so.

Moreover, as Heard points out, although Statue Cruises has identified certain remedial measures taken, it does not assert that these measures render it ADA compliant. Pl's Memo. at 10; *see generally* Burke Aff. This omission is particularly important given Statue Cruises' position that there are no ADA standards governing it in the first instance. *See* Def's Memo. at 2-3. In any event, it is Heard's position that the remedial measures are *not* sufficient to bring Defendant into compliance. *See, e.g., Thomas v. Ariel West*, --- F. Supp. 3d ---, 2017 WL 1031277, at *3 (S.D.N.Y. Mar. 15, 2017) (rejecting mootness argument where parties "vigorously dispute[d]" whether conduct constituted violation of ADA). Finally, Statue Cruises entirely fails to address one of Plaintiff's allegations—the lack of wheelchair-accessible bathrooms—except to assert in conclusory fashion in its brief that the bathrooms were wheelchair accessible already. Def's Memo. at 3; Def's Reply at 7 n.3.[3] For all of these reasons, the Court will not dismiss Plaintiff's claims for injunctive relief as moot.

## II. Plaintiff Has Standing

Statue Cruises next argues that Heard lacks standing to pursue his ADA claim because he was able to board the ferry and therefore did not suffer an injury in fact. They further argue that he has not demonstrated a threat of future harm or that there is any causal connection between

---

[3] While Plaintiff asserts that, as of March 7, 2017, Statue Cruises' website stated that "[r]estrooms aboard ferries are not handicapped accessible," it appears Statue Cruises has since changed its website. *See* Statue Cruises, https://www.statuecruises.com/plan-your-trip/accessibility (last visited June 26, 2017) ("Restrooms aboard ferries may generally be utilized be [*sic*] persons who use wheelchairs."). Whether this changed verbiage reflects an actual change in the bathrooms is not clear. The National Park Service's website continues to represent that "[r]estrooms aboard ferries are not handicapped accessible." Nat'l Park Svc., https://www.nps.gov/stli/planyourvisit/accessibility.htm (last visited June 26, 2017).

his injury and Statue Cruises' conduct. Def's Memo. at 11-12. While Heard concedes that he was able to board the ferry with the assistance of Defendant's employees, he alleges that he was "singled out" for boarding and disembarking and suffered "humiliation and embarrassment" as a result. Compl. ¶¶ 25, 31. The Court finds that Plaintiff has standing and denies Statue Cruises' motion to dismiss on this ground.

"To satisfy constitutional standing requirements, a plaintiff must prove: (1) injury in fact, which must be (a) concrete and particularized, and (b) actual or imminent; (2) a causal connection between the injury and the defendant's conduct; and (3) that the injury is likely to be redressed by a favorable decision." *Kreisler v. Second Ave. Diner Corp.*, 731 F.3d 184, 187 (2d Cir. 2013); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Where, as here, a plaintiff seeks injunctive relief, he also must demonstrate "that the identified injury in fact presents a real and immediate threat of repeated injury." *Kreisler*, 731 F.3d at 187 (citation and internal quotation marks omitted). Applying these requirements in the ADA context, courts have found "standing (and therefore an injury in fact) where (1) the plaintiff alleged past injury under the ADA; (2) it was reasonable to infer that the discriminatory treatment would continue; and (3) it was reasonable to infer, based on the past frequency of plaintiff's visits and the proximity of defendants' [business] to plaintiff's home, that plaintiff intended to return to the subject location." *Id.* at 187-88 (citing *Camarillo v. Carrols Corp.*, 518 F.3d 153, 158 (2d Cir. 2008)).

First, with respect to Statue Cruises' argument that humiliation and embarrassment do not rise to the level of injury in fact, its reliance on a single, nearly 20-year-old, out-of-district decision is not persuasive. Def's Memo. at 11 (citing *Stan v. Wal-Mart Stores, Inc.*, 111 F. Supp. 2d 119, 125 (N.D.N.Y. 2000)). In that decision, the district court did not hold that plaintiff's humiliation and embarrassment were insufficient injuries, it merely noted that "it is unlikely that

8

this rises to the level of an injury under the ADA," and proceeded to the rest of its standing analysis on the assumption that plaintiff had suffered injury in fact. *Stan*, 111 F. Supp. 2d at 125. The district court's *dicta* as to whether plaintiff's humiliation constituted a remediable injury under the ADA was driven by the specific facts of that case—the "rude [and] insensitive" questioning she received from individual employees, notwithstanding defendants' policies and employee training. *Id.* 126-27. As the Court of Appeals subsequently made clear, the district court's decision in *Stan* "does not stand for the proposition that so long as a disabled individual is permitted to shop (or eat), she cannot have suffered injury under the ADA." *Camarillo*, 518 F.3d at 158.

Here, in contrast to the facts of *Stan*, Plaintiff does not allege merely that he was embarrassed as a result of Statue Cruises employees treating him rudely or Statue Cruises' failure to properly train its employees. Rather, he alleges that Statue Cruises' failure to provide an accessible entrance to its ferries forced its employees to single him out in an effort to get him aboard. In addition, as discussed in more detail below, Plaintiff has alleged other injuries: his inability to use the restrooms onboard and being deterred from subsequently visiting the Statue of Liberty or Ellis Island as a result of the ferry's alleged inaccessibility. Compl. ¶¶ 26, 39; *see Kreisler*, 731 F.3d at 188 (deterrence is cognizable injury); *cf. Perdum v. Forest City Ratner Cos.*, 174 F. Supp. 3d 706, 716 (E.D.N.Y. 2016), *aff'd*, 2017 WL 537056 (2d Cir. Feb. 8, 2017) (plaintiff was not deterred because he conceded he returned to store without impediment).

Second, contrary to Defendant's contention, Heard has demonstrated a threat of future harm. Def's Memo. at 12. He alleges that he "desires to visit the Statue of Liberty and Ellis Island in the future, but is deterred from doing so by reason of the difficulties in accessing Statue Cruises' ferry boats while in a wheelchair." Compl. ¶ 39. The proximity of his home to the

ferry, the only means of reaching either the Statue of Liberty or Ellis Island, increases the likelihood of his return. *Id.* ¶ 4. These allegations suffice to establish threat of repeated injury. *See, e.g., Access 4 All, Inc. v. Trump Int'l Hotel & Tower Condo.*, 458 F. Supp. 2d 160, 168 & n.4 (S.D.N.Y. 2006) (plaintiffs with stated intent or desire to return have standing); *Disabled in Action of Metro. N.Y. v. Trump Int'l Hotel & Tower*, No. 01-cv-5518 (MBM), 2003 WL 1751785, at *7-8 (S.D.N.Y. Apr. 2, 2003) (same, collecting cases) (plaintiffs' desire to return was plausible given their previous visits and that they lived in the same city).

In response, Defendant asserts that Heard was demonstrably not deterred because he rode the ferry again in January 2016, citing to a *New York Daily News* article and corresponding video which purports to show Plaintiff on the ferry. Def's Reply at 6 & n.2. The article, dated January 4, 2016, clearly states that the video was recorded "last month," that is, in December 2015, when Heard alleges that he rode the ferry. *See* Dan Rivoli, *Wheelchair Advocate Says NY Ferry Violates Disabilities Law*, N.Y. DAILY NEWS, Jan. 4, 2016, http://www.nydailynews.com/new-york/wheelchair-advocate-ny-ferry-violates-disabilities-law-article-1.2484168. The Court is not persuaded by Defendant's argument that the name of the ferry, *Statue of Liberty V*, is "plainly visible in the video"—it is not, as far as the Court can tell—nor is the Court prepared to accept Defendant's unsupported representation that this ferry was not in service on December 11, 2015. Def's Memo. at 6 n.2.

Third, and finally, Statue Cruises argues that Heard cannot demonstrate a causal connection between his injury and Statue Cruises' conduct or the likelihood of redressability because other entities own and control the embarkation points to the ferry. Def's Memo. at 12 (citing Compl., Ex. C). Even assuming that other entities own the embarkation points, Statue Cruises does not clearly articulate why this prevents it from ensuring legally-compliant ways to

board its ferries or providing wheelchair-accessible bathrooms to guests while on board. For all of these reasons, the Court will not dismiss Plaintiff's ADA claim for lack of standing.

### III. Plaintiff Has Stated a Claim

Finally, Statue Cruises argues that Plaintiff has failed to state a claim. To state a claim for relief under Title III of the ADA, a plaintiff must allege: "(1) that she is disabled within the meaning of the ADA; (2) that defendants own, lease, or operate a place of public accommodation; and (3) that defendants discriminated against her by denying her a full and equal opportunity to enjoy the services defendants provide." *Camarillo*, 518 F.3d at 156 (citing 42 U.S.C. § 12182(a)).[4] Defendant only takes issue with the final element of Plaintiff's claim, arguing that Heard was "not denied a full and equal opportunity to enjoy the ferry services that Statue Cruises provides" because "he was not denied physical access." Def's Memo. at 13. This argument is without merit.

As discussed above, the fact that a plaintiff is able to enter a store, business, or otherwise access defendant's services—here, the Statue Cruises ferries—does not mean that he has not experienced discrimination. *Camarillo*, 518 F.3d at 157-58. The way in which an individual gains entrance to that store or his treatment once inside also can give rise to a discrimination claim. *Id.* In this context, the requirement of "full and equal opportunity to enjoy" means that a defendant cannot fail "to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, *segregated or otherwise treated differently* than other individuals because of the absence of auxiliary aids and services . . . ." 42 U.S.C.

---

[4] The standards governing disability discrimination under the ADA are the same as those under the NYSHRL. *See Krist v. Kolombos Rest., Inc.*, 688 F.3d 89, 97 (2d Cir. 2012). While the NYCHRL "provides somewhat broader rights" than the ADA and requires "independent liberal construction," *Krist*, 688 F.3d at 97 (citation and internal quotation marks omitted), "the Court has not found—and the parties have not identified—any relevant difference between the analysis required by the NYCHRL and the analysis required by the federal laws of the question at issue here. *Brooklyn Ctr. for Independence of Disabled v. Bloomberg*, 980 F. Supp. 2d 588, 643 (S.D.N.Y. 2013).

§ 12182(b)(2)(A)(iii) (emphasis added). Here, Plaintiff was unable to use the designated ramp to board and disembark from Statue Cruises' ferries. The Court is not prepared to find that being singled out for boarding and then forced to use an unstable surface, during which employees twice inadvertently turned off Plaintiff's electric wheelchair, satisfies the ADA's requirement that Plaintiff be given "full and equal" access to Defendant's ferries.

As a result, the decisions cited by Defendant involving only claims that a defendant failed to train its employees properly are inapposite. *See* Def's Reply at 8-9 (citing *West v. Moe's Franchisor, LLC*, No. 15-cv-2846 (WHP), 2015 WL 8484567 (S.D.N.Y. Dec. 9, 2015) and *Stephens v. Shuttle Assocs., L.L.C.*, 547 F. Supp. 2d 269 (S.D.N.Y. 2008)). Plaintiff's claim is not based solely on the allegation that Statue Cruises failed to properly train its employees on how to assist passengers in wheelchairs. He alleges that Statue Cruises has failed to implement an ADA-compliant means to embark and disembark from its ferries and does not offer wheelchair accessible bathrooms onboard. *See* Compl. ¶¶ 23-27.[5]

### IV. Failure to Join a Necessary Party

Statue Cruises also argues that, "to the extent [Plaintiff] seeks any modification of the landings or relief related to land-based ramping," his Complaint should be dismissed for failure to join the landowners—the New York City Parks Department and the State of New Jersey—as necessary parties. Def's Memo. at 13. Because it is not clear that Plaintiff seeks a modification to the landings or that such a modification would be required to remedy the alleged violations, the Court will not dismiss the Complaint pursuant to Rule 12(b)(7). If Plaintiff wishes to amend his Complaint to join these parties, he may do so.

---

[5] Defendant's reliance on *Aquino v. SAG AFTRA*, No. 16-cv-0146 (JS) (GRB), 2017 WL 912063 (E.D.N.Y. Mar. 7, 2017) is equally perplexing. There, plaintiff alleged that it may be difficult or impossible for blind people and those without arms to access the Screen Actors Guild's online ticket lottery; however, plaintiff was neither blind nor missing his arms and therefore had no difficulty registering for tickets. 2017 WL 912063, at *3.

## CONCLUSION

For all of the foregoing reasons, Defendant's motion to dismiss the Complaint is denied.

**SO ORDERED.**

Dated: June 26, 2017
      New York, New York

                                **ANDREW L. CARTER, JR.**
                                **United States District Judge**