

KANE KESSLER, P.C.
666 THIRD AVENUE
NEW YORK, NEW YORK 10017-4041
TEL 212.541.6222
FAX 212.245.3009
WWW.KANEKESSLER.COM

WRITER'S DIRECT NUMBER
212.519.5162

WRITER'S EMAIL
Jschmalz@kanekessler.com

March 19, 2019

Via ECF
Hon. Barbara Moses
United States District Court
Southern District of New York
500 Pearl Street, Room 920
New York, New York 10007

Re: *David Heard v. Statue Cruises*, 2016 CV 01079 (ALC)(BCM)
    **DEFENDANT'S MOTION FOR SANCTIONS**

Dear Judge Moses:

By this Motion, Defendant, Statue Cruises LLC, pursuant to FRCP Rule 37 and the Court's inherent authority to address actions undermining the fair administration of justice, seeks that sanctions be imposed upon Plaintiff's counsel, Wachtel and Missry, LLC, and/or the attorneys directly involved in discovery impropriety (individually and collectively, the "Wachtel Firm"). This motion is submitted as provided by your Order of March 5, 2019.

As explained further herein, the Wachtel Firm, specifically William Wachtel, engaged in ex-parte dialogue with Shea Thorvaldsen ("Thorvaldsen") an individual who is the former Director of the Marine Division of the Defendant's designated expert McLaren Engineering Group (See Affidavit of Malcolm McLaren at ¶ 4).[1] Further, the Wachtel Firm, by acts of misdirection, claiming to need Thorvaldsen's contact

---

[1] The Affidavit of Malcolm McLaren with exhibits is submitted in support of the instant motion.

1

information during a deposition when it had already interacted with Thorvaldsen, were knowingly deceptive as to the fact the Wachtel Firm was already in dialogue with Thorvaldsen. Finally, in view of the inherent common law fiduciary obligation of a former employee and Director (and in this case, one with a contractual confidentiality obligation), the Wachtel Firm knowingly induced a non-party to act unlawfully relative to his fiduciary and contractual duties and obligations to his former employer and its client Statue Cruises.

Unfortunately, no sanction can fully cure the actions, short of removing from the case the attorneys who engaged in impropriety being removed from the case as counsel – insulating the Defendant from the use of whatever confidential information was revealed. Indeed, Defendant should not be compelled to go to proceed and potentially go to trial at risk of what an inside mole has unlawfully revealed to opposing counsel. The circumstances are unfair and highly prejudicial given the improper conduct of both Thorvaldsen vis-à-vis his employer, and the Wachtel Firm vis-à-vis the Defendant's expert witness confidentiality expectations.

## Factual Background

At a discovery hearing before the Honorable Judge Moses on March 5, 2019 (herein, the "Hearing"), Plaintiff's counsel William Wachtel represented to the Court that he had recently engaged in communications with Thorvaldsen.

In response to further questions by the Court as to the possible impropriety of dialogue with Thornvaldsen, which the Wachtel Firm, and particularly William Wachtel who has personal experience in the maritime industry, knew at the time to be a former employee of Defendant's designated expert. Plaintiff's counsel stated that he neither

considered, nor cautioned Thornvaldsen as to the possible impropriety of his actions in disclosing not only private information of his former employer, but also information directly related to the very Defendant involved in this case, and even more pointedly to issues both Thornvaldsen and Plaintiff likely knew to be directly involved in the instant litigation, known only to Thornvaldsen by reason of his employment.[2]

The episode cannot be waived off as benign. Thorvaldsen was the employee of McLaren with a significant amount of time spent in services related to the Defendant's expert retention. (See Affidavit of Malcolm McLaren at ¶ 13). Thorvaldsen was involved in the initial retention dialogue, spending extensive conference time with defense counsel Steven Bers and the Defendant's General Manager, Michael Burke, going right to the heart of the case - discussing the specific allegations of the case, and the possible issues as might arise in developing defenses. In fact, Thorvaldsen was the single-most involved person, assigned to the expert representation of Defendant, until his employment ended on March 22, 2018, having spent 14 documented and billed expert hours related exclusively to the expert retention project in this case (See Affidavit of Malcolm McLaren at Exhibit B).

In a meeting and dialogue on November 14, 2017, Thorvaldsen was present for a site visit and meeting with defense counsel, for a documented period of eight hours, at which time the case allegations were reviewed, with internal dialogue as to what might, or might not be readily achievable with respect to accessibility for disabled persons, the

---

[2] In fact, Thornvaldsen is party to a standard confidentiality agreement (See, Affidavit of Malcolm McLaren at Exhibit A) with his former employer, McLaren Engineering Group, prohibiting disclosure of confidential information, which clearly appears to have been violated by conduct confirmed on record by Plaintiff at the Hearing.

key issue in the case.³ Indeed, his listed services include such detailed descriptions as multiple discussions with Michael Burke as to case information issues, and entries indicating review as to ADA and Local Law 68 claims. In short, Thorvaldsen was not merely an employee of Defendant's expert – not merely an individual with some work on the expert representation – but rather, before he left employment he was the single-most involved employee of McLaren in providing the expert witness service to Defendant's expert retention.

During the course of the deposition by Plaintiff's counsel Sara Spiegelman of Malcolm McLaren on February 28, 2018, Ms. Spiegelman asked if Mr. McLaren could supply the telephone number for Mr. Thorvaldsen.⁴ The question was posed during a time when Plaintiff's counsel, by its own admission at the Hearing, had for weeks or even months, already been in dialogue with Thorvaldsen, and thus the only possible explanation for the question was to misdirect Defendant – to make Defendant believe that Plaintiff's counsel had not been in touch with Thorvaldsen. Defendant is not privy to the entire degree to which Thorvaldsen downloaded information as to defense strategy and theories to which he was privy while employed by McLaren.

---

³ In that November 14, 2018 conversation in which Thorvaldsen actively participated, one discussed but rejected hypothecation was whether a folding gangway might be utilized. It is beyond a mere happenstance that in February 2019, shortly after the admitted ex-parte engagement between Thorvaldsen and Wachtel Firm, that the Wachtel Firm began proposing the use of a folding gangway. Notably, their expert witness, who filed a report months before the admitted ex-parte interaction, had not advocated for a folding gangway.

⁴ Pages from the Deposition Transcript in this case of Malcolm McLaren taken on February 28, 2019 reflecting this exchange are attached hereto as Exhibit A to this motion.

4

## The Violation of Law and Ethical Standards

It is well established that under FRCP 26(b)(4) a party may not engage in an ex-parte contact with the designated expert of the opposing party. Such contact is only permitted by use of formal discovery, unless the parties otherwise agree. See, *Campbell Industries v. M/V Gemini*, 619 F2d 24, 27 (9th Cir. 1980), finding ex-parte contact of an opposing party's expert witness to be a "flagrant abuse" of the federal discovery rules. *Campbell* further held such improper action to be subject to sanctions under FRCP Rule 37 as tantamount to discovery misconduct; the federal courts having the inherent authority to sanction parties engaged in such abuses. Inherent in the law is the recognition that going behind the back of an opponent undermines the ability of parties to have a confidential relationship with an expert as to fact and legal theories, and thus undermines the fairness of the legal process.

It is clear that Plaintiff's counsel engagement in an ex-parte dialogue with Thorvalden was improper. That is, the Plaintiff's counsel should not be allowed to do in two surreptitious steps what it would clearly be prohibited from doing under FRCP Rule 26(b)(4) in one step. Plaintiff's counsel was aware that Thorvaldsen had been previously employed by Defendant's expert, and if anything, the admitted facts show that it was Thorvaldsen's prior engagement with McLaren at the heart of the dialogue. That is, Defendant submits its belief that this was the nature of the ex-parte dialogue - to functionally circumvent the FRCP 26(b)(4) prohibition.

As to the misdirection initiative, it is axiomatic under the laws of professional responsibility that there is a duty of basic fundamental fairness to opposing counsel, and to the integrity of the judicial process, that does not allow surreptitious actions such as the pattern of conduct engaged in by the Wachtel Firm. In this regard, the New York Code of Professional Responsibility prohibits both "conduct involving dishonest, fraud, deceit or misrepresentation" and "conduct that is prejudicial to the administration of justice." *See* N.Y. Rules of Prof. Conduct, R. 8.4. Indeed, as early as 1993 the American Bar Association issued a Formal Opinion indicating that ex parte communication with an opponent's expert witness would be inconsistent with an attorney's ethical obligations where the matter was pending in a federal court, due to the fact that such ex parte contact would be inconsistent with the expert discovery procedures specified in Federal Rule 26. *See* ABA Comm. on Prof'l Ethics, Formal Op. 93-378 (Nov. 8, 1993). Such contact is all the more egregious where, as here, it is accompanied by an attempt to avoid detection of the ex-parte contact.

Further, in entering into communications with Thorvaldsen regarding information he learned in the course of his employment with McLaren Engineering Group, the Wachtel Firm facilitated Thorvalden's breach of legal and contractual duties owed to McLaren under his employment contract. Such conduct is inconsistent with the requirement that attorneys "shall not . . . use methods of obtaining evidence that violate the legal rights of" third persons. *See* N.Y. Rules of Prof. Conduct, R. 4.4(a).

### The Only Meaningful Sanction is Disqualification

The circumstances of this conduct present a great challenge in determining an appropriate sanction – one that relieves the Defendant of having to proceed forward unaware as to what has already been improperly disclosed and improperly received – one that is more than an inconsequential slap-on-the-hands in bringing to the meaningful appreciation and an effective preventative incentive to the Wachtel Firm as to the impropriety of its actions. It is impossible to un-ring the bell of what was told to Plaintiff's counsel. Indeed, there is admittedly no clear precedential path as to the standard sanction for this conduct, as so few instances of like conduct have been found in the research.

For this reason, Defendant can only recommend a disqualification-related sanction, either to the Wachtel Firm in its entirety, or alternatively, to any involvement by any attorney at the Wachtel Firm that had any contact with Thovaldsen directly, or with information he provided. Only in this way can there be an attempted meaningful protection to Defendant's information.

Defendant notes that at the Hearing the Court prohibited future involvement in this case of one party to the improper communications, Thorvaldsen. It likewise makes sense that the other half of that improper dialogue - the attorneys who contacted Thorvaldsen - should also be removed from a position in which they can use any disclosed data or information.

"A federal court's power to disqualify an attorney derives from its 'inherent power to preserve the integrity of the adversary process.'" *Coggins v. County of Nassau*, 615 F. Supp. 2d 11, 30 (E.D.N.Y. 2009) (quoting *Hempstead Video, Inc. v. Inc. Vill. of Valley*

*Stream*, 409 F.3d 127, 132 (2d Cir. 2005)). The disqualification of counsel "is a matter committed to the sound discretion of the district court." *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir. 1990). Although disqualification has been described as a remedy to be deployed infrequently, the Second Circuit has held disqualification to be appropriate where "'allowing the representation to continue would pose a significant risk of trial taint.'" *Coggins*, 615 F. Supp. 2d at 30 (quoting *Glueck v. Jonathan Logan, Inc.*, 653 F.2d 746, 748 (2d Cir. 1981)).

Once the integrity of the proceeding is undermined, there is no way to un-ring the bell. Defendant should not be made to go to trial under conditions in which it is made to worry as to whether the attorneys sitting at the other table have had an inside briefing as to Defendant's confidential theories and private dialogues.

Wherefore the Defendant respectfully requests that the Court issue an order disqualifying the Wachtel Firm from continued representation of the Plaintiff and participation in this case, or alternatively, the ongoing participation in any manner of any Wachtel attorney that had any contact with Thorvaldsen or such other relief as this Court deems just and proper.

Respectfully submitted,

Jennifer Schmalz, Co-Counsel
Steve Bers, Co-Counsel

Cc: Sara Spiegelman, Esq.
Willliam Wachtel, Esq.

# EXHIBIT A

```
                    UNITED STATES DISTRICT COURT
                   SOUTHERN DISTRICT OF NEW YORK
    ------------------------------------------------x
    DAVID HEARD,
                            Plaintiff,
                                              Civil Action No.
           -vs.-                              01079
    STATUE CRUISES, LLC,
                            Defendant.
    ------------------------------------------------x



               Oral sworn deposition of MALCOLM G.
    MCLAREN, PE SECB, taken in the law offices of
    Wachtel Missry, 885 Second Avenue, 47th Floor,
    New York, New York  10017 before Connie
    Stanieski, a Shorthand Reporter and Notary Public
    within and for the State of New York, on February
    28, 2019 commencing at 10:07 a.m.




                      QUANTUM LEGAL SOLUTIONS
                       Corporate Headquarters
                     23 Vreeland Road, Suite 205
                       Florham Park, NJ 07932
                 (866) 4972402    Fax: (866) 497-2423
```

2

1  A P P E A R A N C E S:
2
3       WACHTEL MISSRY LLP
4       BY:  SARA SPIEGELMAN, ESQ.
5       885 Second Avenue, 47th Floor
6       New York, New York  10017
7       Attorneys for the Plaintiff
8       (212)909-9675
9
10      KANE KESSLER, P.C.
11      BY:  JENNIFER M. SCHMALZ, ESQ.
12      666 Third Avenue
13      New York, New York  10017-4041
14      Attorneys for the Defendant
15      (212)541-6222f
16
17
18
19
20
21
22
23
24
25

```
 1                STIPULATIONS
 2         IT IS HEREBY STIPULATED AND AGREED, by and
 3    between the attorneys for the respective parties
 4    hereto that the sealing and filing of the within
 5    deposition be, and the same hereby are waived;
 6    and that the transcript may be signed before any
 7    Notary Public with the same force and effect as
 8    if signed before the Court.
 9         IT IS FURTHER STIPULATED AND AGREED, that
10    all objections, except as to the form of the
11    question, shall be reserved to the time of the
12    trial.
13
14
15
16
17
18
19
20
21
22
23
24
25
```

50

1        MALCOLM G. MCLAREN
2  of McLaren's server?
3        A.    Yes.
4        Q.    You didn't bring them here with you
5  today, did you?
6        A.    No.
7        Q.    Did you provide them to your lawyer?
8        A.    I don't think so.
9        Q.    So take a look at Exhibit 3.  What
10 is McLaren Exhibit 3?
11       A.    It's a revision to this proposal.
12       Q.    And is it your testimony that this
13 revision was prepared by someone other than
14 yourself?
15       A.    Yes.
16       Q.    Who was it prepared by?
17       A.    Shea Thorbaldsen.
18       Q.    What is his current position?
19       A.    He does not work for us any more.
20       Q.    Where does he work?
21       A.    I think he has his own marine
22 construction firm.
23       Q.    Are you still in contact with him?
24       A.    No.
25       Q.    What is his phone number?

```
 1                MALCOLM G. MCLAREN
 2       A.    I don't know.
 3       Q.    You don't have it?
 4       A.    I don't have it on me, no.
 5       Q.    Well, is it in your phone?
 6       A.    Could be.
 7       Q.    Can you check?
 8             MS. SCHMALZ:  Objection.
 9       Q.    Can you check?
10             MS. SCHMALZ:  Objection, objection.
11    Why are you asking for someone's phone
12    number?
13             MS. SPIEGELMAN:  To call him.
14             MS. SCHMALZ:  So he used to work for
15    McLaren?
16             MS. SPIEGELMAN:  Yes.
17             MS. SCHMALZ:  And you're saying that
18    you don't have this person's information?
19             MS. SPIEGELMAN:  McLaren's
20    information?
21             MS. SCHMALZ:  Shea Thorbaldsen's
22    information.  Sitting here today you guys
23    don't have his information?
24       A.    You can ask Wachtel --
25       Q.    Okay, I'll ask him.
```