UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:____3/18/20____

DAVID HEARD,

                    Plaintiff,

          -against-

STATUE CRUISES LLC,

                    Defendant.

16-CV-1079 (ALC) (BCM)

**ORDER**

**BARBARA MOSES, United States Magistrate Judge.**

Plaintiff David Heard, who is disabled and uses a wheelchair, filed this action on February 11, 2016, against defendant Statue Cruises, which operates ferries from Manhattan to the Statue of Liberty and Ellis Island. Plaintiff alleges that Statue Cruises violated the Americans with Disability Act (ADA) and related laws by failing to make its ferries, including their gangplanks and restrooms, "fully accessible to the disabled." Compl. (Dkt. No. 1) ¶¶ 1-4, 22-28, 40-47.

Now before the Court is defendant's motion (Dkt. No. 73) to disqualify plaintiff's counsel of record, all of whom are associated with the law firm Wachtel & Missry, LLP (the Wachtel Firm), in light of communications that took place in late 2018 and early 2019 between two attorneys at the Wachtel Firm – partners William B. Wachtel and Sara Spiegelman – and a marine engineer, Shea Thorvaldsen, who was at that time a former colleague of defendant's retained expert witness, Malcolm G. McLaren, at the McLaren Engineering Group (McLaren Engineering). For the reasons set forth below, defendant's motion will be denied.[1]

---

[1] A decision regarding the disqualification of counsel is a non-dispositive matter within the scope of my authority pursuant to 28 U.S.C. § 636(b)(1)(A) and Fed. R. Civ. P. 72(a). *Ultrapak, LLC v. Laninver USA, Inc.*, 2019 WL 244492, at *1 n.1 (W.D.N.Y. Jan. 17, 2019); *British Int'l Ins. Co. v. Seguros La Republica, S.A.*, 2002 WL 31307165, at *3 n.1 (S.D.N.Y. Oct. 15, 2002) (collecting cases); *Weeks Stevedoring Co. v. Raymond Int'l Builders, Inc.*, 174 F.R.D. 301, 303-04 (S.D.N.Y. 1997) (collecting cases).

# I.    BACKGROUND

## A.    Pre-Litigation Relationships

McLaren Engineering has a substantial history with the Wachtel Firm. According to attorney Wachtel, both he individually and the Wachtel Firm generally have had "a long-standing professional relationship with McLaren [Engineering], long pre-dating the filing of this lawsuit." Declaration of William B. Wachtel (Wachtel Decl.) (Dkt. No. 75) ¶ 3. McLaren Engineering performed professional services for "several clients" of the Wachtel Firm, as well as for BillyBey Ferry, a company of which attorney Wachtel was a principal owner. *Id.* Thorvaldsen, who joined McLaren Engineering in February 2015, worked on "a number of these matters." *Id.*; *see also* Declaration of Shea Thorvaldsen (Thorvaldsen Decl.) (Dkt. No. 77) ¶ 2 ("I have a long-standing professional relationship with William Wachtel, Esq., and his law firm, Wachtel Missry LLP, going back years before this lawsuit was filed.").

McLaren Engineering also has a substantial history with Statue Cruises. In January 2014, it submitted a written proposal "in response to the request from Statue Cruises for engineering services to develop a system of mechanical land-based gangways at seven different upland locations." (Dkt. No. 72-4 at ECF page 2.) The January 2014 proposal noted that Phase I of the engineering process would consist of "document research," which would include seeking an "[o]pinion from attorney on need for ADA Compliance of gangways." (*Id.*) In August 2015, McLaren Engineering submitted an updated proposal to develop a system of gangways at seven Statue Cruises locations. (*Id.* at ECF page 12.) In its August 2015 proposal, McLaren Engineering listed, as an "exclusion," document research including an "opinion from an attorney on the need for ADA Compliance of gangways." (*Id.* at ECF page 16.) Thorvaldsen, who joined McLaren Engineering in early 2015, worked on the August 2015 proposal. Affidavit of Malcolm G.

McLaren (McLaren Aff.) (Dkt. No. 73-1) ¶ 10 & Ex. A; Malcolm G. McLaren Deposition Transcript (McLaren Dep.) (Dkt. No. 73 at ECF pages 10-14), at 50:9-17.

According to Thorvaldsen, before this lawsuit was filed, "Mr. Wachtel asked [him] about Statue Cruises' ferries and their compliance" with the ADA. Thorvaldsen Decl. ¶ 4; *see also* Wachtel Decl. ¶ 4 (same). Thorvaldsen told attorney Wachtel that "McLaren had submitted two proposals to Statue Cruises regarding ADA issues, one in 2014 before I joined McLaren and one in 2015 after I joined McLaren [Engineering], but . . . Statue Cruises had never accepted either of those proposals." Thorvaldsen Decl. ¶ 4; *see also* Wachtel Decl. ¶ 4 (same). This interaction – which took place long before McLaren was retained to provide expert testimony in this action – is not the basis of the instant disqualification motion.

**B.     Developments After This Action Was Filed**

When plaintiff commenced this action on February 11, 2016, his counsel of record was Adam Richards of O'Reilly Stoutenberg Richards, LLP. Approximately one year later, on February 2, 2017, attorneys Wachtel, Spiegelman, and Julian Schreibman – all associated with the Wachtel Firm – substituted in as plaintiff's counsel of record. (Dkt. No. 25.) On March 16, 2017, defendant filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), (6), and (7). (Dkt. No. 29.) On June 26, 2017, the Court denied that motion. (Dkt. No. 35.)

Between August and October 2017, the parties attempted to settle this action. Declaration of Sara Spiegelman (Spiegelman Decl.) (Dkt. No. 76) ¶ 3. During this period, defendant's counsel proposed to attorney Spiegelman that the parties use McLaren Engineering "as a neutral third party to resolve this case." *Id*. The parties did not ultimately use McLaren Engineering for that purpose, however, and the "settlement discussions eventually failed in or about October of 2017." *Id.*

In October 2017, defendant, through its counsel, retained McLaren to serve as its expert witness in this case. Affirmation of Steven Bers (Bers Aff.) (Dkt. No. 78-1) ¶ 2; McLaren Aff. ¶ 3. At the time, Thorvaldsen was still employed by McLaren Engineering, as its "Director, Marine Division." Bers Aff. ¶ 5; McLaren Aff. ¶ 4 & Ex. B. After McLaren was retained in this case, he and Thorvaldsen "reviewed and discussed a copy of the Case complaint, the technical issues presented and foreseeable responses as we would advise." McLaren Aff. ¶ 3. According to McLaren, Thorvaldsen was also "included in email communication with both defense counsel and Statue Cruises." *Id.* ¶ 6.

On November 14, 2017, McLaren and Thorvaldsen met with Statue Cruise's Chief Operating Officer, Michael Burke, and its attorneys, Bers and Jennifer Schmalz. Bers Aff. ¶ 3. The meeting included "a site tour of the vessels" and discussion of "matters relating to the Case," including "the viability of legal and technical defenses relative to the vessels in question," and "an in depth consideration as to whether any modifications might be readily achieved, one of which was the feasibility and challenge of a folding gangway." *Id.* After the site inspection, McLaren, Thorvaldsen, and Bers went to lunch, and "further discussed the issues involved in the litigation including the claims and defenses thereto." *Id.* ¶ 6. Attorney Bers "specifically recall[s] McLaren and Thorvaldsen providing me their expert opinions regarding the claims as they related to the Statue Cruises' gangways." *Id.*

According to the November 30, 2017 invoice that McLaren Engineering sent to defendant's counsel, Thorvaldsen spent a total of 14 hours between October 16 and November 21, 2017 (including eight hours on November 14, 2017) performing services in support of McLaren's expert witness engagement in this action. McLaren Aff. Ex. B. According to Thorvaldsen, however, he has "no recollection of ever speaking to any attorney for Statue Cruises or discussing any issues

relating to Statue Cruises' defenses to this lawsuit." Thorvaldsen Decl. ¶ 5. There is no evidence that Thorvaldsen performed any work on the Statue Cruises matter after November 21, 2017.

Sometime in "late 2017," attorney Wachtel informed attorney Spiegelman that "he had learned that McLaren had in its possession information concerning Statue Cruises" and the ADA. Spiegelman Decl. ¶ 4. At that point, defendant's counsel had not yet disclosed the engagement of McLaren as its expert witness in this litigation. *Id.* ¶ 5. In early January 2018 – still unaware of the engagement – attorney Spiegelman drafted and served a non-party subpoena for McLaren's deposition. *Id.* ¶ 4. On January 11, 2018, after the service of that subpoena, defendant's counsel told Spiegelman that Statue Cruises had engaged McLaren as an expert witness. *Id.* ¶ 5. There is no evidence that defendant's counsel (or anyone else) told Spiegelman (or anyone else at the Wachtel Firm) that Thorvaldsen had worked on that expert witness engagement.

On March 22, 2018, Thorvaldsen's employment with McLaren Engineering came to an end. McLaren Aff. ¶ 9. In connection with the termination of his employment, Thorvaldsen and McLaren executed a rider to the Confidentiality and Non-Competition Agreement he had signed when he joined the firm. (Dkt. No. 73-2 at ECF pages 8-10.) The rider recognized that Thorvaldsen had performed services for "common" clients both "before" and during his tenure at McLaren Engineering, *id.* at ECF page 8, and excluded those clients – including the Wachtel Firm – from the non-competition and non-solicitation clauses of Thorvaldsen's the Confidentiality and Non-Competition Agreement. *Id.* at ECF page 10.[2]

---

[2] The rider did not relieve Thorvaldsen of his obligations under a separate Employee Confidentiality Agreement (Emp. Conf. Ag.) (Dkt. No. 73-2 at ECF pages 1-3), in which he agreed that, during and after his employment with McLaren Engineering, he would keep various categories of information confidential. "Where clients of the Company [McLaren Engineering] have specifically requested confidentiality in the dissemination of information of their intellectual property by the Company, Employee shall be bound by the same confidentiality. Company shall indicate the extent of such agreements to Employee." *Id.* ¶ 1(g).

Fact discovery closed on April 30, 2018. On October 29, 2018, defendant served plaintiff with its expert report, prepared by McLaren. Spiegelman Decl. ¶ 8; Wachtel Decl. ¶ 6. Some time after receipt of that report, attorney Wachtel "made inquiry of" Thorvaldsen regarding McLaren Engineering's two proposals to defendant Statue Cruises in 2014 and 2015, which defendant had never produced. *See* Tr. of March 5, 2019 Conf. (Mar. 5 Tr.) (Dkt. No. 82) at 28:19-29:1; Pl. Letter dated Feb. 15, 2019 (Feb. 15 Ltr.) (Dkt. Nos. 67, 72) at 2. Wachtel demanded that defendant produce those proposals (which it did on February 8, 2019) and all related documents (which Statue Cruises failed to do). Feb. 15 Ltr. at 2-3. On February 15, 2019, plaintiff filed a letter-motion seeking to compel their production and requesting severe sanctions, including the entry of a default judgment against defendant. Feb. 15 Ltr. at 2. (*See also* Dkt. Nos. 68, 70.)

### C.      The March 5, 2019 Hearing

On March 5, 2019, I held a hearing on plaintiff's letter-motion to compel. I concluded that the 2014 and 2015 proposals were within the scope of plaintiff's discovery requests and should have been produced during fact discovery. Consequently, I directed defendant to produce all communications between itself and McLaren Engineering with regard to the proposals and/or the underlying projects, as well as all documents "created, received, or sent" by McLaren Engineering concerning those proposals and/or the underlying projects. (Dkt. No. 71.)

During the March 5, 2019 hearing, attorney Wachtel disclosed that he had been aware of the existence of such documents, at least in part, because he "had the benefit of insights going back many years from someone who worked at McLaren." Mar. 5 Tr. at 21:2-8. In response to a direct question from the Court, Wachtel identified that "someone" as Thorvaldsen, *id.* at 21:25, and informed the Court that he intended to call Thorvaldsen as a fact witness at trial (though he was never listed in plaintiff's disclosures made pursuant to Fed. R. Civ. P. 26(a)(1)). *Id.* at 21:13-25.

Defendant's counsel, Jennifer Schmalz, responded that attorney Wachtel's newly-disclosed communications with Thorvaldsen were "highly inappropriate." Mar. 5 Tr. at 23:8-14. She informed the Court that Thorvaldsen "was employed by McLaren Engineering at the time that McLaren was retained as an expert in this case," that he attended the "first inspection" with McLaren "as our expert in this case," with defendant's counsel present, and that he was "privy to documents and information of our expert." *Id.* at 23:2-14.

In response, attorney Wachtel stated that his "inquiry" to Thorvaldsen was limited to the 2014 and 2015 proposals, which "happened years ago," Mar. 5 Tr. at 30:16-17, and that he had "no notion whatsoever that Mr. Thorvaldsen was in any way shape or form involved with the work" McLaren performed for Statue Cruises as its expert in this action. *Id.* at 30:10-14. Wachtel denied asking Thorvaldsen "whether he was involved in the expert retention," insisting that his conversation was "[a]s simple as didn't you do a study some time ago or wasn't some study done a while ago? It had nothing to do with this expert report. Nothing." *Id.* at 30:18-24. After learning – at the hearing – that Thorvaldsen had worked on McLaren's expert engagement in this action, Wachtel reversed course with regard to calling Thorvaldsen as a fact witness at trial, and stated that plaintiff would not do so. *Id.* at 28:3-9.

Attorney Schmalz then repeated her contention that Wachtel's communications were "improper," Mar. 5 Tr. at 31:10-20, and proposed (1) "that the Court prohibit the plaintiff from further interaction" with Thorvaldsen, and (2) that Thorvaldsen "not be permitted to testify as a witness in this trial." *Id.* at 31:25-32:5. There was no discussion concerning the disqualification of plaintiff's counsel.

At the conclusion of the March 5, 2019 conference, I ordered – as defendant had requested, and plaintiff had agreed – that Thorvaldsen "will not in fact be called as a witness to testify" in this

action. Mar. 5 Tr. at 34:15-18. I further ordered: "If the defendant believes there is grounds for any additional court orders with regard to Mr. [Thorvaldsen], the defendant may make a motion in that regard." *Id.* at 34:18-22. (*See also* Dkt. No. 71.) This motion followed.

### D.    Defendant's Motion to Disqualify

On March 19, 2019, defendant filed its motion to disqualify the Wachtel Firm or, in the alternative, to prohibit "the ongoing participation in any manner of any Wachtel [Firm] attorney that had any contact with Thorvaldsen." Def. Mem. (Dkt. No 73) at 8. Defendant argues (1) that the Wachtel Firm's *ex parte* communications with Thorvaldsen "functionally circumvent[ed]" Rule 26(b)(4)'s formal procedures for conducting discovery of experts and was inconsistent with ethical guidance issued by the American Bar Association (ABA), *id.* at 5-6, and (ii) that the Wachtel Firm "facilitated Thorvald[s]en's breach of legal and contractual duties owed to McLaren [Engineering] under his employment contract," in violation of New York Rule of Professional Conduct (RPC) 4.4(a), which provides that attorneys shall not use "methods of obtaining evidence that violate the legal rights of" a third person. *Id.* at 6. Defendant contends that it "should not be compelled to go to proceed and potentially go to trial at risk of what an inside mole has unlawfully revealed to opposing counsel." *Id.* at 2.

On March 25, 2019, plaintiff filed his opposition (Opp. Mem.) (Dkt. No. 74), arguing that his counsel's communications with Thorvaldsen took place in the context of a long-standing relationship between Thorvaldsen and the Wachtel Firm, and did not include any disclosure, by Thorvaldsen, of defendant's legal theories or any other confidential information known to Thorvaldsen as a result of his work on the expert engagement. Plaintiff submitted the declarations of Wachtel, Spiegelman, and Thorvaldsen himself. According to attorney Spiegelman (whose communications with Thorvaldsen were not previously disclosed):

I communicated with Shea Thorvaldsen between November 2018-February 2019. I had no knowledge that Mr. Thorvaldsen had any involvement in McLaren's work as an expert witness for Statue Cruises. I did know that Mr. Thorvaldsen had once been employed by McLaren, but I believed that his employment had terminated well before McLaren was retained as Statue Cruises' expert. At no time did Mr. Thorvaldsen inform me that he had worked for McLaren [Engineering] while McLaren was serving as Statue Cruises' expert. Mr. Thorvaldsen never disclosed to me any communications with Statue Cruises' attorneys, or any of Statue Cruises' legal theories or other work product.

Spiegelman Decl. ¶ 9. Similarly, attorney Wachtel declares:

In none of my communications with Mr. Thorvaldsen, either before or after he left McLaren's employ, did Mr. Thorvaldsen ever tell me that he had done any work for McLaren relating to Statue Cruises' defense of this lawsuit. Indeed, he never said anything to me that even suggested that he had had any involvement with Statue Cruises beyond the work he did in 2015 on the second proposal which Statue Cruises rejected. At no time did Mr. Thorvaldsen disclose to me any of Statue Cruises' legal theories or other work product.

Wachtel Decl. ¶ 7. Thorvaldsen himself declares:

After I left McLaren, I had discussions with Mr. Wachtel regarding Statue Cruises. I did not disclose to Mr. Wachtel any communication with any of Statue Cruises' attorneys, because I do not recall ever having had such communications.

Thorvaldsen Decl. ¶ 6.[3]

Against this backdrop, plaintiff argues that defendant has failed to meet its burden to show that Thorvaldsen disclosed any legal theories, work product, or confidential information to plaintiff's counsel. Opp. Mem. at 2-3. Therefore, plaintiff reasons, defendant has failed to show that the trial in this action will be "tainted," *id*., as required for disqualification pursuant to *Wachovia Bank, Nat. Ass'n v. Focus Kyle Grp., LLC*, 896 F. Supp. 2d 330, 331 (S.D.N.Y. 2012)

---

[3] As noted above, Thorvaldsen states that he has "no recollection of ever speaking to any attorney for Statue Cruises or discussing any issues relating to Statue Cruises' defenses to this lawsuit." Thorvaldsen Decl. ¶ 5. It is not clear whether he has any recollection of speaking to attorney Spiegelman. He does not mention those communications in his declaration.

("Disqualification is only warranted if an attorney's conduct tends to taint the underlying trial.") (internal quotation marks and citation omitted).

On March 27, 2019, defendant filed its reply (Def. Reply Mem.) (Dkt. No. 78), labeling as "not credible" both Thorvaldsen's "failure to recall his interaction with Statue Cruises' counsel in his role as an expert" and the "suggestion" (actually, the clear attestation of attorneys Spiegelman and Wachtel) that "Thorvaldsen did not share substantive knowledge gained during his activities as Statue Cruises' expert." *Id.* at 3-4. Defendant argues that disqualification is the "only remedy" that will cure the "inherent prejudice of having opposing counsel use improperly obtained knowledge of its strategy and defenses from its very own expert," but that monetary sanctions "may also be appropriate." *Id.* at 4.

## II.    LEGAL STANDARD

"The authority of federal courts to disqualify attorneys derives from their inherent power to 'preserve the integrity of the adversary process.'" *Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005) (quoting *Bd. of Educ. v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979)). In exercising that power, the Court must balance "a client's right freely to choose his counsel" against "the need to maintain the highest standards of the profession." *Gov't of India v. Cook Indus., Inc.*, 569 F.2d 737, 739 (2d Cir. 1978). The Second Circuit has shown "considerable reluctance to disqualify attorneys despite misgivings about the attorney's conduct" – a reluctance which "probably derives from the fact that disqualification has an immediate adverse effect on the client by separating him from counsel of his choice, and that disqualification motions are often interposed for tactical reasons." *Nyquist*, 590 F.2d at 1246; *see also Wachovia Bank*, 896 F. Supp. 2d at 331 ("Because disqualification motions interfere with a party's right to the counsel of its choice and are often made for tactical reasons, they are viewed with disfavor . . . and the party

seeking disqualification must meet a heavy burden of proof in order to prevail.") (internal quotation marks and citation omitted).

"As a general matter, disqualification of counsel 'has been ordered only in essentially two kinds of cases: (1) where an attorney's conflict of interests . . . undermines the court's confidence in the vigor of the attorney's representation of his client . . . or more commonly (2) where the attorney is at least potentially in a position to use privileged information concerning the other side through prior representation.'" *Homeward Residential, Inc. v. Sand Canyon Corp.*, 2019 WL 5634171, at *2 (S.D.N.Y. Oct. 31, 2019) (quoting *Bobal v. Rensselaer Polytechnic Inst.*, 916 F.2d 759, 764-65 (2d Cir. 1990)); *accord Nyquist*, 590 F.2d at 1246.

"The business of the court is to dispose of litigation and not to act as a general overseer of the ethics of those who practice [before it,] unless the questioned behavior taints the trial of the cause before it." *W. T. Grant Co. v. Haines*, 531 F.2d 671, 677 (2d Cir. 1976); *see also Papanicolaou v. Chase Manhattan Bank, N.A.*, 720 F. Supp. 1080, 1082 (S.D.N.Y. 1989) ("Courts, of course, exist to resolve disputes, and not to discipline lawyers who come before them."). Therefore, a "violation of professional ethics does not [ ] automatically result in disqualification of counsel." *W. T. Grant*, 531 F.2d at 677; *accord Hempstead Video*, 409 F.3d at 132 (although courts' decisions on disqualification motions "often benefit from guidance offered by the [ABA] and state disciplinary rules . . . such rules merely provide general guidance and not every violation of a disciplinary rule will necessarily lead to disqualification") (internal citations omitted). Instead, the remedy of disqualification "should ordinarily be granted only when a violation of the Canons of the Code of Professional Responsibility poses a significant risk of trial taint." *Metcalf v. Yale Univ.*, 2018 WL 6258607, at *4 (D. Conn. Nov. 30, 2018) (quoting *Glueck v. Jonathan Logan, Inc.*, 653 F.2d 746, 748 (2d Cir. 1981)). *See also Papanicolaou*, 720 F. Supp. at 1083 ("a district

judge should disqualify the offending counsel when the integrity of the adversarial process is at stake."); *accord Wachovia Bank*, 896 F. Supp. 2d at 331.

The Second Circuit has stated that, "in the disqualification situation, any doubt is to be resolved in favor of disqualification." *Hull v. Celanese Corp.,* 513 F.2d 568, 571 (2d Cir. 1975). However, "[g]iven that, as a rule, parties should have the right to counsel of their choice, and that disqualification in the midst of litigation can have a profoundly disruptive impact, a party's burden in seeking to disqualify opposing counsel is high, and the court tasked with resolving such a motion must proceed with care." *Benevida Foods, LLC v. Advance Magazine Publishers Inc.*, 2016 WL 3453342, at *10 (S.D.N.Y. June 15, 2016) (collecting cases); *see also United States v. Schulte*, 2020 WL 534508, at *4 (S.D.N.Y. Feb. 3, 2020) ("Disqualification motions therefore place a *heavy burden* on the *moving party* to demonstrate that disqualification is appropriate.") (emphasis in original); *Wachovia Bank*, 896 F. Supp. 2d at 331 (the party seeking disqualification must meet a "heavy burden" in order to prevail).

"In the end, after careful analysis, motions to disqualify are 'committed to the sound discretion of the district court.'" *Benevida Foods*, 2016 WL 3453342, at *11 (quoting *Purgess v. Sharrock,* 33 F.3d 134, 144 (2d Cir. 1994)); *accord Arista Records LLC v. Lime Grp. LLC*, 2011 WL 672254, at *4 (S.D.N.Y. Feb. 22, 2011) (quoting *Ritchie v. Gano*, 2008 WL 4178152, at *2 (S.D.N.Y. Sept. 8, 2008)) ("District courts have broad discretion to disqualify attorneys, but it is a 'drastic measure' that is viewed with disfavor in this Circuit.").

## III.    ANALYSIS

On the specific facts of this case, the Court declines to impose the "drastic measure" of disqualification of plaintiff's chosen counsel.

## A.    There Was No Clear Misconduct By Plaintiff's Counsel

As an initial matter, the record before the Court does not establish that plaintiff's counsel violated either Rule 26(b)(4) or the ABA's guidance regarding *ex parte* communications with an opposing party's expert. Rule 26(b)(4) permits a party to depose an opposing party's expert, but limits the scope of expert discovery by extending the protection of the work product doctrine to drafts of the expert's written report and communications between the expert and the attorneys for the party that engaged the expert. *See* Fed. R. Civ. P. 26(b)(4)(B), (C). Communications regarding the expert's compensation, the "facts or data" that the expert considered, or the assumptions that the expert relied on, however, remain discoverable. Fed. R. Civ. P. 26(b)(4)(C)(i)-(iii). The ABA, while acknowledging that "the Model Rules [of Professional Conduct] do not specifically prohibit a lawyer in a civil matter from making ex parte contact with the opposing party's expert witness," opined that "such contacts would probably constitute a violation of Rule 3.4(c) if the matter is pending in federal court or in a jurisdiction that has adopted an expert-discovery rule patterned after Federal Rule 26(b)(4)(A)." ABA Comm. on Ethics and Prof. Responsibility, Formal Op. 93-378 (1993).[4]

To be sure, some courts have admonished attorneys for engaging in direct *ex parte* communications with an expert witness during that witness's engagement by an opposing party. *See*, *e.g.*, *Calaway v. Schucker*, 2013 WL 12033181, at *2 (W.D. Tenn. May 10, 2013) (noting that "Rule 26(b)(4)(A) permits a party to depose a person identified as an expert witness," and sets forth the procedure for doing so, and concluding that "an attorney violates the ethical duty to

---

[4] Model Rule 3.4 provides: "A lawyer shall not . . . (c) knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists[.]" ABA Model Rule of Prof. Conduct 3.4. There is no analog to Model Rule 3.4(c) in the current New York Rules of Professional Conduct.

'conform to the rules of a tribunal before which a particular matter is pending' established under Model Rule of Professional Conduct 3.4(c) when the attorney engage[s] in *ex parte* communication with the opposing party's expert witness.")[5]; *Erickson v. Newmar Corp.*, 87 F.3d 298, 302 (9th Cir. 1996) (citing Fed. R. Civ. P. 26(b)(4)(A), a Nevada ethics rule patterned on Model Rule 3.4(c), and ABA Formal Op. 93-378).[6] Neither of these cases, however, imposed the disfavored remedy of disqualification.

In the case at bar, moreover, attorneys Wachtel and Spiegelman communicated with Thorvaldsen, not McLaren himself, and the challenged communications took place long after

---

[5] In *Calaway*, medical expert Dr. Rouse was retained to testify for the defendant physicians in two different cases – *Calaway* and *Clark* – in which the plaintiffs happened to be represented by the same attorney. During Dr. Rouse's deposition in the *Clark* case, counsel "questioned Dr. Rouse about his opinions in the case at bar but without giving Dr. Schucker (the defendant in *Calaway*) an opportunity to be present or represented at the deposition." 2013 WL 12033181, at *2. The magistrate judge granted defendant's *limine* motion to prevent the plaintiff in *Calaway* from cross-examining Dr. Rouse "about his deposition testimony" taken in *Clark*, *id*. at *1, and the district judge affirmed, barring plaintiff from "using the [*Clark*] deposition to contradict or impeach Dr. Rouse at trial" in *Calaway*. *Id*. at *3.

[6] In *Erickson*, the *pro se* plaintiff retained a metal expert, Grimm, and a chassis expert, Bennett, to support his claim that the recreational vehicle he purchased from Newmar was a "lemon." 87 F.3d at 299. On the morning of Grimm's deposition, Newmar's counsel offered Grimm $100 per hour to evaluate a lock in a different case, which counsel was handling for a different client. *Id.* at 300. After the deposition, counsel conferred privately with Grimm. *Id.* Plaintiff protested, leading to a "heated argument" between plaintiff and defendant's counsel, during which counsel refused to promise that he would not "tamper" with plaintiff's second expert, Bennett. Thereafter, Erickson fired Grimm, because he "did not know if he could trust him," and Bennett refused to proceed as Erickson's expert, because "the attorneys [were] bothering the witnesses." *Id.* Erickson filed a "Motion for Judgment against Newmar for Tampering with a Material Witness," which the district judge denied five days before trial, forcing Erickson to go to trial with no experts. *Id.* On appeal – after judgment was entered in favor of Newmar – the Ninth Circuit explained that the case was not just about an *ex parte* contact with a testifying expert; it was about "an attorney who offered a monetary inducement to an expert witness prior to the expert giving his testimony," thereby putting Grimm "in the position of having divided loyalties." *Id.* at 301, 303. Concluding that this was unethical conduct – and that, as a practical matter, it deprived Erickson of both of his experts and prevented him from receiving a fair trial, *id.* at 302-03 – the Ninth Circuit held that the district court abused its discretion by failing to "examine the charge of unethical behavior and impose the necessary sanctions." *Id.* at 303-04. The appellate court remanded for a new trial and "appropriate sanctions," without specifying what those sanctions might be. *Id.* at 304.

Thorvaldsen left McLaren Engineering. While the Court accepts that Thorvaldsen assisted McLaren in the early stages of his expert witness engagement for Statue Cruises, there is no evidence that either Wachtel or Spiegelman was aware of that work until the hearing before this Court on March 5, 2019. *See* Mar. 5 Tr. at 30:10-12 (attorney Wachtel, stating, "I had no notion whatsoever that Mr. Thorvaldsen was in any way shape or form involved with [this matter]"); *accord* Wachtel Decl. ¶ 7; Spiegelman Decl. ¶ 9.[7] Nor is it obvious to the Court that Spiegelman and Wachtel should have assumed that Thorvaldsen worked on this matter before leaving McLaren Engineering, particularly given that: (1) defendant proposed that the parties use McLaren Engineering as a neutral third-party mediator sometime between August and October 2017, at which point McLaren was, presumably, not yet retained as defendant's expert; (2) Thorvaldsen left McLaren Engineering in March 2018, just two months after defendant's disclosure of McLaren as its expert witness in January 2018; and (3) defendant did not serve McLaren's expert report until October 2018, seven months after Thorvaldsen left the firm. Under these circumstances, the Court cannot find that attorney Wachtel or Spiegelman violated Rule 26(b)(4) or ABA Model Rule 3.4(c)

---

[7] Defendant argues that the Court should be skeptical of the sworn statements of plaintiff's counsel because, during the deposition of McLaren on February 28, 2019, attorney Spiegelman asked McLaren for Thorvaldsen's phone number. McLaren Dep. at 50:25-51:25. Defendant contends that the "only possible explanation" for these questions "was to misdirect Defendant," Def. Mem. at 4, since Spiegelman (by her own admission) communicated with Thorvaldsen between November 2018 and February 2019, and must have already known his phone number. I cannot agree. On March 5, 2019, in open court, attorney Wachtel volunteered the fact that his firm had been in contact with Thorvaldsen. Mar. 5 Tr. at 21:2-8. It would have been wholly illogical for the Wachtel Firm to employ a scheme of misdirection one week (to conceal a fact that, insofar as the record shows, needed no concealing, as defendant did not suspect it), only to volunteer those same communications the next. Moreover, it is entirely plausible that Spiegelman lacked Thorvaldsen's phone number simply because she had previously communicated with Thorvaldsen only through Wachtel. I note, in this regard, that after attorney Schmalz made a series of objections to Spiegelman's questions about Thorvaldsen's phone number, McLaren himself volunteered: "You can ask Wachtel," to which Spiegelman replied "Okay, I'll ask him." Def. Mem. Ex. A at 51:7-25.

by knowingly engaging in "ex parte" communications with McLaren's former colleague Thorvaldsen.

Nor does the record support a finding that plaintiff's counsel violated New York's RPC 4.4(a) by "inducing" Thorvaldsen to "act unlawfully relative to his fiduciary and contractual duties and obligations to his former employer and its client Statue Cruises." Def. Mem. at 2. Thorvaldsen was expressly authorized, by McLaren Engineering, to perform services for (which necessarily entails communicating with) the Wachtel Firm. That authorization did not, of course, permit him to divulge confidential or privileged information concerning an expert engagement that he worked on while at McLaren Engineering for the party-opponent of one of the Wachtel Firm's clients. As discussed in more detail below, however, the Court is not persuaded that Thorvaldsen divulged any confidential or privileged information, much less that the Wachtel Firm intentionally induced him to do so.[8]

**B.    The Wachtel Firm's Communications with Thorvaldsen Do Not Present a "Significant Risk of Trial Taint"**

Even assuming, *arguendo*, that the Wachtel Firm's communications with Thorvaldsen violated Rule 26(b)(4), ABA Model Rule 3.4(c), or RPC 4.4(a), defendant has not shown that they resulted in the disclosure of confidential or privileged information sufficient to create a "significant risk of trial taint." *Metcalf*, 2018 WL 6258607, at *4 (disqualification "should ordinarily be granted only when a violation of the Canons of the Code of Professional Responsibility poses a significant

---

[8] Determining whether a lawyer violated RPC 4.4(a) by obtaining information from a non-party who was contractually obligated to keep that information confidential "is a question of law beyond the scope of the Rules of Professional Conduct," and "will often require legal research into substantive law." Simon's N.Y. Rule of Prof. Conduct Annotated § 4.4:2. Under the substantive law of New York, the tort of inducing breach of contract requires proof of "defendant's intentional procurement of the third-party's breach." *Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 424, 668 N.E.2d 1370, 1375 (1996); *see also Israel v. Wood Dolson Co.*, 1 N.Y.2d 116, 120, 134 N.E.2d 97, 99 (1956) (plaintiff must prove "the defendant's intentional procuring of the breach").

risk of trial taint"). In order to establish a "significant risk of trial taint" in this case, defendant would need to show that (1) defendant and/or its attorneys provided Thorvaldsen with confidential or privileged information about this case; and (2) Thorvaldsen divulged that information to plaintiff's counsel, leading to a risk that plaintiff's counsel could use it against defendant at trial. *Drag Racing Techs., Inc. as D.R.T., Inc. v. Universal City Studios, Inc.*, 2003 WL 1948798, at *3 n.2 (S.D.N.Y. Apr. 24, 2003) (quoting *Nyquist*, 590 F.2d at 1246) ("Trial taint can [ ] be established when an attorney is 'at least potentially in a position to use privileged information concerning the other side[.]'"). I conclude that defendant has not made either requisite showing.

First, defendant has not met its burden to show that it provided Thorvaldsen with confidential or privileged information. "[U]nlike attorney-client communications, conversations between a party and an expert carry no presumption of confidentiality." *Breitkopf v. Gentile*, 2014 WL 12843765, at *5 (E.D.N.Y. Mar. 24, 2014) (collecting cases); *accord Homeward Residential*, 2019 WL 5634171, at *2 ("Courts presume that an attorney – but not an expert – received confidential information in the course of his or her representation.").

As noted above, Rule 26(b)(4)(C) provides "work-product protection for attorney-expert communications," in order to "ensure that lawyers may interact with retained experts without fear of exposing those communications to searching discovery." Fed. R. Civ. P. 26 adv. comm. note to 2010 amend. *See also Callahan v. Toys "R" Us-Delaware Inc.*, 2016 WL 9686055, at *3 (D. Md. July 15, 2016) ("communications between attorneys and clients [ ] are protected by the attorney-client privilege," while "communications between attorneys and experts [ ] are protected under an extension of the work-product doctrine"). "Protected 'communications' include those between the party's attorney and assistants of the expert witness." Fed. R. Civ. P. 26 adv. comm. note to 2010 amend. However, Rule 26(b)(4)'s work product protection does not encompass the "facts or data"

considered by a testifying expert witness, *see* Fed. R. Civ. P. 26(b)(4)(C)(ii), which must be affirmatively disclosed to the opposing party in the expert's written report. *See* Fed. R. Civ. P. 26(a)(2)(B)(ii). Nor does the work product doctrine protect communications between experts in which no attorney is involved. *Powerweb Energy, Inc. v. Hubbell Lighting, Inc.*, 2014 WL 655206, at *2 (D. Conn. Feb. 20, 2014) ("the work-product protection afforded by Rule 26(b)(4)(C) does not attach to communications between [plaintiff's experts].").

In this case, defendant has shown that Thorvaldsen assisted McLaren, at the outset of his expert engagement for Statue Cruises, for a total of 14 hours over the course of approximately one month in late 2017. Eight of those 14 hours were spent on November 14, 2017, in connection with the "site tour" of defendant's vessels. McLaren Aff. Ex. A. In addition, Thorvaldsen and McLaren discussed "the issues upon which we would be requested to review relative to the claims of the Case, and the defenses thereto." McLaren Aff. ¶ 5. Thorvaldsen was also included in "email communications with both defense counsel and Statue Cruises," *id.* ¶ 6, and, together with McLaren, participated in conversations with defendant and its counsel about "the viability of legal and technical defenses relative to the vessels in question," including "whether any modifications might be readily achieved, one of which was the feasibility and challenge of a folding gangway." *Id.* ¶¶ 7-8; Bers. Aff. ¶ 3. Over lunch on November 14, 2017, Thorvaldsen and McLaren provided attorney Bers with unspecified "expert opinions" regarding plaintiff's claims "as they related to the Statue Cruises' gangways." Bers Aff. ¶ 6.

Thorvaldsen's site tour, in and of itself, did not expose him to protected information. Any facts he learned on that tour fell within the scope of facts "considered" by McLaren, which were discoverable pursuant to Fed. R. Civ. P. 26(a)(2)(B)(ii) and 26(b)(4)(C)(ii). Similarly, Thorvaldsen's conversations with McLaren, in which no attorney was involved, likely do not

qualify for work product or attorney-client privilege protection. *Powerweb Energy*, 2014 WL 655206, at *2. *Accord Pennenvironment & Sierra Club v. PPG Indus., Inc.*, 2014 WL 12589147, at *2 (W.D. Pa. Oct. 7, 2014) ("communications between and among the experts and the experts' staff (not referencing or inferring the theories or mental impressions of counsel) will not be protected"), *report and recommendation adopted*, 2014 WL 12588523 (W.D. Pa. Nov. 3, 2014). And defendant's claim that Thorvaldsen was present for discussion about "the issues involved in the litigation including the claims and defenses thereto," Bers Aff. ¶ 6, is too general to establish that Thorvaldsen was provided any specific privileged or confidential information that would post a significant risk of trial taint. *See Sec. & Exch. Comm'n v. Lek Sec. Corp.*, 2018 WL 417596, at *5 (S.D.N.Y. Jan. 16, 2018) (concluding that a party's "generic assertion of prejudice is insufficient to demonstrate that its trial would be tainted" by disclosure of allegedly privileged documents containing "counsel's thoughts, strategies, priorities, theories and impressions"); *Intelli-Check, Inc. v. TriCom Card Techs., Inc.*, 2005 WL 3533153, at *9 (E.D.N.Y. Dec. 22, 2005) (explaining that "speculative conjectures are insufficient to meet [a party's] burden to show a significant risk of trial taint," and collecting cases).

The only specific issue that defendant's counsel claims to have discussed with Thorvaldsen was "the feasibility and challenge of a folding gangway." Bers Aff. ¶ 3; McLaren Aff. ¶ 8. However, even assuming that Thorvaldsen received confidential and/or privileged information concerning that issue during his work on this matter at McLaren Engineering, defendant has failed to establish that he shared any such information with plaintiff's counsel one year later, after defendant served McLaren's final written report – which is when the allegedly improper communications took place. As noted above, Wachtel, Spiegelman, and Thorvaldsen each deny that Thorvaldsen disclosed any of defendant's "legal theories or work product" to the Wachtel

Firm. Wachtel Decl. ¶ 7; Spiegelman Decl. ¶ 9; Thorvaldsen Decl. ¶ 6. Absent evidence to the contrary, "courts have frequently denied motions to disqualify counsel based on sworn testimony providing that no confidential or privileged information has been shared." *Raba v. Suozzi*, 2006 WL 8435604, at *7 (E.D.N.Y. Nov. 17, 2006).

In its opening brief, defendant argues that "[i]t is beyond a mere happenstance that in February 2019, shortly after the admitted ex-parte engagement between Thorvaldsen and Wachtel Firm, that the Wachtel Firm began proposing the use of a folding gangway." Def. Mem. at 4 n.3. However, the assertion that plaintiff raised "the use of a folding gangway" for the first time in February 2019 appears only that brief, unsupported by any of defendant's declarations. Nor does Statue Cruises identify the context in which plaintiff raised the issue.[9] This Court cannot disqualify counsel based upon a factually unsupported argument in a party's brief. *See Karsch v. Blink Health Ltd.*, 2019 WL 2708125, at *17 n.19 (S.D.N.Y. June 20, 2019) (factual assertions that are "made only in defendants' brief and are not supported by any evidence" cannot be "the basis of any sanctions assessed"); *Raba*, 2006 WL 8435604, at *16 ("No proof has been presented that specific confidential information was shared that might taint the underlying trial.").

---

[9] If plaintiff did raise the issue of a folding gangway for the first time in February 2019, there are a number of plausible explanations. The parties paused expert discovery in January 2019 so that they could discuss settlement. (*See* Dkt. No. 66.) Plaintiff made a settlement proposal on January 15, 2019, and defendant made a counterproposal on February 15, 2019. (*See* Dkt. No. 68 at 2.) In ADA cases, settlement negotiations often spark a discussion of what methods are readily achievable to make the premises accessible to persons with disabilities. Moreover, on February 8, 2019, defendant produced, for the first time, McLaren Engineering's January 2014 gangway proposal to Statue Cruises. *See* Feb. 15 Ltr. at 2. In that proposal, McLaren wrote that his firm would "consider all reasonable alternatives, including telescoping gangways, articulated gangways, staged gangways, floats in the water on guardrails, cable actuated, hydraulic actuated." (Dkt. No. 72-4 at ECF page 3.) Upon receipt of the January 2014 proposal, it would have been reasonable for plaintiff to inquire of defendant whether it or McLaren in fact considered "all reasonable alternatives," including folding gangways.

I therefore conclude that defendant has not shown that Thorvaldsen received any specific privileged or confidential information from Statue Cruises, nor that he disclosed defendant's "strategy and defenses" to plaintiff's counsel, *see* Def. Reply Mem. at 4, so as to create a "significant risk of trial taint" in this case. To the extent that such a risk stemmed from the possibility that plaintiff would call Thorvaldsen as a witness, it has been adequately mitigated by the Court's order prohibiting plaintiff from doing so. (Dkt. No. 71 ¶ 5.)[10]

## C.     Alternative Remedies

Aside from the disqualification of plaintiff's counsel, the only remedy that defendant requests for the asserted misconduct of the Wachtel Firm is monetary sanctions "with respect to any fees or costs claimed by the Wachtel [F]irm." Def. Reply Mem. at 4. Defendant does not explain what fees or costs have been or will be "claimed by" the Wachtel Firm, nor how this Court can award sanctions to defendant with respect to fees or costs claimed by plaintiff's counsel. In any event, the Court declines to consider a request for monetary sanctions made for the first time in a reply brief, *see Mango v. BuzzFeed, Inc.*, 397 F. Supp. 3d 368, 375 (S.D.N.Y. 2019) ("the Court is persuaded that it should not consider the two arguments raised for the first time in Mango's Reply"), and further declines to award monetary sanctions to a party that has not prevailed on its motion to disqualify.

---

[10] As noted above, plaintiff does not argue that Thorvaldsen improperly disclosed the existence of McLaren Engineering's 2014 and 2015 engineering proposals to attorney Wachtel in 2016 (long before McLaren was engaged as Statue Cruise's expert witness), nor that Wachtel improperly obtained that information. Any such argument would necessarily fail as a basis for disqualification. Even if Thorvaldsen was obligated to keep those documents confidential (and even if Wachtel knew of that obligation), the Court could not find that the disclosure of the 2014 and 2015 proposals would "taint" this trial after ruling that the same documents should have been produced by defendant during fact discovery. (Dkt. No. 71.)

## IV.    CONCLUSION

For the reasons set forth above, defendant's motion to disqualify some or all of plaintiff's attorneys of record from continuing to represent him in this action (Dkt. No. 73) is DENIED. The parties shall bear their own costs and fees.

Discovery having concluded, the parties are directed to submit a joint letter addressed to the district judge, no later than **April 1, 2020**, proposing a schedule for the filing of pre-motion letters regarding summary judgment and/or a joint pretrial order. *See* Individual Practices of Andrew L. Carter, Jr. §§ 2(A), 4(A).

Dated:  New York, New York
        March 18, 2020

SO ORDERED.

**BARBARA MOSES**
**United States Magistrate Judge**